United States District Court
for the
Southern District of Florida

| West Flagler Associates, LTD, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 19-21670-Civ-Scola |
|  | ) |  |
| City of Miami, Defendant. | ) |  |

### Order on Defendant's Motion to Dismiss

This matter is before the Court on Defendant City of Miami's (the "City") motion to dismiss the Plaintiff's complaint. (ECF No. 8.) The Plaintiff responded (ECF No. 11) and the Defendant timely replied. (ECF No. 17.) Having considered the record, the parties' submissions, and the applicable law, the Court **grants in part and denies in part** the Defendant's motion. (**ECF No. 8**.).

### I.  Background

Plaintiff West Flagler Associates ("West Flagler") is a limited partnership formed for the express purpose of building and operating a summer jai alai fronton with gambling, including a cardroom, in the City of Miami. (ECF No. 1-2 at ¶¶ 1-2.) In 2012, West Flagler's attorneys had informal discussions with the Zoning Administrator of the City of Miami to identify the areas zoned for its intended facility. (*Id.* at ¶ 11.) The Zoning Administrator advised that pari-mutuel, slot machine, and other gambling uses permitted by state law are considered "entertainment establishments" as the term is defined in the City's zoning code. (*Id.*) The Zoning Administrator also identified the various zoning transects that permitted such use. (*Id.*) West Flagler then requested a formal verification letter from the City of Miami confirming that pari-mutuel activities and slot machines are permitted in certain zoning transects. (*Id.* at ¶ 12.) In response, the Defendant sent a zoning verification letter which confirmed that gambling uses were allowed in the specific zoning transects identified by the Plaintiff. (*Id.*)

Based on the City's letter, the Plaintiff chose a suitable location that was zoned to permit an entertainment establishment. (*Id.* at ¶ 13.) The Plaintiff entered into a Memorandum of Understanding (the "MOU") with the owner of eighteen contiguous properties in the vicinity of 30th Street and Biscayne Boulevard, which are all zoned for use as an entertainment establishment. (*Id.*) The MOU contemplated that if West Flagler obtained a state gambling permit, then the owner of the properties would build the required facility at the location.

(*Id.*) After entering the MOU, the Plaintiff began the process of obtaining the gambling license from the state. (*Id.* at ¶ 15.)

As part of the process, the state of Florida required the Plaintiff to provide a confirmation from the City of Miami that the specific properties were all authorized for use as a jai alai fronton and cardroom. (*Id.* at ¶ 18.) The Plaintiff sought this confirmation from the City of Miami and received 18 separate zoning verification letters. (*Id.* at ¶ 20.) After considerable expenditure and resources, the state's Division of Pari-mutuel Wagering issued a permit authorizing West Flagler to conduct pari-mutuel wagering on the game of jai alai and operate a cardroom on the properties. (*Id.* at ¶ 21.)

On July 26, 2018, just 23 days after the Plaintiff received its permit, the Miami City Commission passed Resolution No. 18-0347. The Resolution directed the City Manager to initiate efforts to pass an amendment to the Miami zoning code that would require that entertainment establishments conducting pari-mutuel wagering be permitted only by special exception upon a four-fifths vote of approval by the City Commission. (*Id.* at ¶ 25.)

The Plaintiff applied for and was given a demolition permit to start the project on September 4, 2018. (*Id.* at ¶ 26.) On September 5, 2018, a proposed ordinance prepared by the City Manager pursuant to Resolution No. 18-0347 came before the Planning, Zoning, and Appeals Board. (*Id.* at ¶ 27.) The Planning, Zoning, and Appeal Board recognized that the Ordinance was intended to apply retroactively to Plaintiff and voted to deny the proposed ordinance. (*Id.*) The City moved forward with the ordinance. On September 13 and 27, 2018, the City Commission held public hearings on the first and second readings of the proposed ordinance that would require the entertainment establishment conducting pari-mutuel wagering to receive approval by the City Commission by a four-fifths affirmative vote. (*Id.* at ¶ 28.) Ordinance 13791 (the "Ordinance") was adopted by affirmative vote of four of the five City Commissioners and became effective as of October 7, 2018. (*Id.*) The Ordinance amended the City's zoning code to require that gambling facilities are allowed by "exception" with City Commission approval by a four-fifths vote. (*Id.* at ¶ 33.)

On January 17, 2019, the City of Miami Building Department rejected or refused to process the property owner's building permit for the jai alai fronton facilities on the basis that construction would not be permitted without an exception upon a four-fifths vote of approval by the City Commission pursuant to the Ordinance. (*Id.* at ¶ 34.)

## II. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all allegations in the complaint as true,

construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Faced with a motion to dismiss, a court should therefore "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their accuracy and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 662 (2009)). "Regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law." *Surgery Center of Viera, LLC v. Southeastern Surveying and Mapping Corp.*, No. 17-cv-754-orl-40TBS, 2018 WL 922202, at *3 (M.D. Fla. Jan. 31, 2018) (citations and quotations omitted).

## III. Analysis

The Defendant's motion to dismiss attacks the Plaintiff's complaint by arguing that (1) its claims are not ripe; (2) the Plaintiff lacks standing to bring these claims; and (3) that each claim fails to state a cause of action. (ECF No. 8.) The Court will address each argument in turn.

### A. Ripeness

The Defendant first argues that the Plaintiff's claims are not ripe because the Plaintiff has not proceeded through the administrative process to obtain an exception by a four-fifths vote of the Commissioners. (ECF No. 8 at 6.) In response, the Plaintiff argues that it is not required to exhaust administrative remedies and reapply for a building permit in order to bring its § 1983 due process claims (Counts IV and V). (ECF No. 11 at 2-3.) While the Plaintiff recognizes that the "Court's ripeness determination varies according to the type of claim alleged," neither party analyzes the ripeness argument on a claim by claim basis. (*Id.* at 3.) The Defendant's motion and reply make no effort to assert an argument specific to the Plaintiff's equitable estoppel, declaratory judgment, and impairment of contracts causes of action. (ECF No. 17.) Accordingly, the Court will construe the Plaintiff's motion as a motion to dismiss Counts IV and V on ripeness grounds.

Before embarking on a ripeness analysis, the Court must first determine which category of claims are being asserted by the Plaintiff. "An arbitrary and capricious due process claim can be either a facial challenge to the regulation or a challenge to the regulation as applied to the plaintiff's property." *Eide v. Sarasota Cty.*, 908 F.2d 716, 723 (11th Cir. 1990). A facial challenge asserts that

the mere adoption of the regulation or ordinance is arbitrary and capricious. *Id.* On the other hand, an as applied challenge, in Plaintiff's case, would assert that West Flagler was arbitrarily and capriciously denied an exception to build its jai alai fronton because of the application of the ordinance to West Flagler's property. *See id.* at 723-24. "For a facial challenge, the remedy is the striking down of the regulation. In the case of an as applied challenge, the remedy is an injunction preventing the application of the regulation to plaintiff's property and/or damages resulting from the unconstitutional application." *Id.* at 722.

Count IV and Count V of the Plaintiff's complaint are almost identical except for the relief sought. (*Compare* ECF No. 1-2 at ¶¶ 55-62 *with* ¶¶ 65-72.) Count IV seeks damages pursuant to 42 U.S.C. § 1983 and Count V seeks a declaration that the ordinance is invalid. Because "the nature of the claim . . . is often revealed by the remedy sought," *Eide*, 908 F.2d at 726, the Court construes Count IV as an as applied challenge and Count V as a facial challenge.

With regard to West Flagler's as applied due process challenge (Count IV), the Court finds that West Flagler's claim is not ripe. In *Eide v. Sarasota County*, the Eleventh Circuit articulated the ripeness standard for an as applied due process challenge. *Id.* at 724. The Court held that "in order to challenge the [City]'s *application* of the [ordinance] to [the Plaintiff's] property, [the Plaintiff] must first demonstrate that the [ordinance] has been *applied* to his property." *Id.* (emphasis in original). That is, the Eleventh Circuit requires that the zoning or permitting decision be "finally made and applied to the property at issue." *Id.* (emphasis in original). *See also Coles v. City of Jacksonville*, No. 15-cv-1521, 2017 WL 6059661, at *10 (M.D. Fla. Dec. 7, 2017) (holding that the plaintiff's claims were not ripe because the plaintiff had not received a final decision on zoning exceptions). Here, the Ordinance requires that anyone seeking to build a gambling facility must seek an exception with City Commission approval by four-fifths affirmative vote. The Plaintiff's as applied challenge challenges the application of this ordinance to his project. However, the Plaintiff has not sought the required exception from the Commission. Therefore, Plaintiff's claim is not ripe.[1] *See Eide*, 908 F.2d at 725 ("If the authority has not reached a final decision with regard to the application of the regulation to the landowner's property, the

---

[1] The Eleventh Circuit also recognizes an exception to this rule when it would be futile to obtain a final decision. *Eide v. Sarasota Cty.*, 908 F.2d at 726. However, the burden would be on the Plaintiff to assert that this exception applies. *Coles v. City of Jacksonville,* 15-cv-1521, 2017 WL 6059661, at *10 (M.D. Fla. Dec. 7, 2017). Because the Plaintiff has not raised this exception, much less met its burden of demonstrating it applies, the Court will not consider it.

landowner cannot assert an as applied challenge to the decision because, in effect, a decision has not yet been made.").

With regard to West Flagler's facial due process challenge, the Court finds that West Flagler's claim is ripe. "Courts have entertained facial arbitrary and capricious due process claims on the merits while simultaneously finding that the same landowner's . . . as applied arbitrary and capricious due process claim was premature." *Id.* at 723. In *Eid,* the Eleventh Circuit held that the finality requirement "does not apply to a facial challenge." *Id.* at 724 n. 14. "There is an important reason for this distinction: when a landowner makes a facial challenge, he or she argues that *any* application of the regulation is unconstitutional; for an as applied challenge, the landowner is only attacking the decision that applied the regulation to his or her property, not the regulation in general." *Id.* Therefore, the Plaintiff's facial challenge is ripe for adjudication.

**B. Standing**

The Defendant next argues that the Plaintiff lacks standing to bring these claims because West Flagler is not a party to the MOU and West Flagler is not the owner or leaseholder of the properties upon which the gambling facilities would be built. (ECF No. 8 at 7.) In response, the Plaintiff asserts that it can establish standing because ownership or a leasehold interest is not required to establish standing as long as the Plaintiff has suffered economic injury. (ECF No. 11 at 4-5.) Moreover, the MOU is signed by Magic City Casino, which is a registered fictitious name for the Plaintiff, the entity that owns and operates Magic City Casino. (*Id.* at 4 n. 3.) Therefore, the Plaintiff is indeed a party to the MOU.

The Defendant abandoned its argument regarding the Plaintiff's standing because its Reply failed to address any of the Defendant's arguments or authority. *See Gibbons v. McBride,* 124 F. Supp. 3d 1342, 1373 (S.D. Ga. 2015) ("Defendants abandoned any challenge to the [Plaintiff's argument] when they failed to address it in their reply brief.); *Cobra Int'l, Inc. v. BCNY Int'l, Inc.*, No. 05-61225, 2006 U.S. Dist. LEXIS 102129, at *7 n.1 (S.D. Fla. Oct. 5, 2006) (Seltzer, Mag. J.). Moreover, while the Defendant failed to cite any case law in support of its position, the cases cited by the Plaintiff support its argument that ownership rights are not required to confer standing in this case. *See, e.g., White v. City of Live Oak, Florida,* No. 09-cv-391-J-34JRK, 2010 WL 11623480, at *12 (M.D. Fla. June 8, 2010). Accordingly, the Court denies the Defendant's motion to dismiss based on the Plaintiff's standing.

### C. Failure to State Claim

#### i. Count III

The Defendant next argues that the Plaintiff's complaint fails to state a cause of action. The Defendant's motion is difficult to follow. It begins with a heading titled "Federal Claims" and then lists "impairment of contracts" as the first claim it intends to attack. (ECF No. 8 at 8.) But Plaintiff's impairment of contract claim, Count III, is based on a violation of the Florida Constitution. (ECF No. 1-2 at 13.) The Defendant again repeats its impairment of contract argument on the last page of the motion under a "declaratory relief" heading. (ECF No. 8 at 16.) The argument in both sections is the same: the MOU is not the type of agreement that gives rise to an impairment claim because the Plaintiff is not a party to the agreement and the MOU is speculative. The Defendant does not provide any citations in support of its position. (ECF No. 8 at 8-9, 16.)

In response, the Plaintiff again argues that it is indeed a party to the MOU, as asserted in the complaint. Moreover, the existence of a termination provision that may be triggered by certain events does not render the contract "speculative." (ECF No. 11 at 13.) In its Reply, the City does not address these arguments and instead argues that the Plaintiff has failed to demonstrate that it has a vested right to operate a cardroom at the subject facility. (ECF No. 17 at 8.)

It appears the Defendant has again abandoned its arguments by failing to respond to the Plaintiff's arguments and improperly raising new arguments in its Reply. *See Baltzer v. Midland Credit Mgmt., Inc.*, No. 14-20140, 2014 WL 3845449, at *1 (S.D. Fla. Aug. 5, 2014) (Goodman, Mag. J.) ("A reply memorandum may not raise new arguments or evidence[.]"). Based on the well pleaded allegations in the Plaintiff's complaint, the Court finds that the Plaintiff has established that the MOU created a contractual relationship. (ECF No. 1-2 at ¶¶ 3-4.) Given that this is the only element of the impairment of contracts claim that was attacked by the Defendant's motion to dismiss, the Court denies the Defendant's motion as to Count III.

#### ii. Count V

With regard to Count V, the Defendant argues that the Plaintiff's due process claim must fail because the Plaintiff cannot establish a vested right to construct and operate the facility at issue based on the City's zoning verification letters alone. (ECF No. 17 at 6.) The Plaintiff argues that a vested right in property is established through the doctrine of equitable estoppel. (ECF No. 11 at 14.) According to the Plaintiff, it has established equitable estoppel because it (1) relied in good faith, (2) upon an act or omission of the government and (3) has

made such a substantial change in position or incurred such extensive obligations and expenses that it would be inequitable to destroy the rights acquired. (*Id.*) Upon careful review, the Court agrees with the Plaintiff.

The question before the Court is whether the plaintiff was deprived of a constitutionally protectible property interest. *Reserve, Ltd. v. Town of Longboat Key*, 17 F.3d 1374, 1379 (11th Cir. 1994). "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are often defined by existing rules or understanding that stem from an independent source such as state law[.]" *Id.* Moreover, "Florida courts have consistently held that a landowner has a property right in a building permit where the landowner possesses a building permit and where the circumstances that give rise to the doctrine of equitable estoppel are present." *Id.* The Defendant correctly points out that the majority of cases dealing with this issue involve the issuance of a permit and then a *subsequent* change in law. Here, the Plaintiff has not obtained a permit. "However, this fact does not alter the analysis." *See Decarion v. Monroe Cty.*, 853 F. Supp. 1415, 1419 (S.D. Fla. 1994). "Florida courts have found that equitable estoppel may create property interests in obtaining permits even where no permits have been issued, where the statutory prerequisites have been met and the agency had no discretionary power to deny the permit." *Id. See also Charlotte Cty. v. Vetter*, 863 So. 2d 465, 469 (Fla. 2d DCA 2004) ("the fact that [plaintiffs] had not received the building permit or made physical changes to the land does not preclude the application of the doctrine of equitable estoppel.").

Under Florida law, the doctrine of equitable estoppel may be invoked if the Plaintiff relied "(1) in good faith (2) upon some act or omission of the government and (3) has made such a substantial change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right he acquired." *Id.* Here, the Plaintiff alleges that it reasonably relied on the City's various zoning verification letters and existing zoning regulations to pursue its plans to develop the jai alai facility, enter an MOU with the owner of the property, and expend substantial sums of money to obtain the gambling permit from the State of Florida. (ECF No. 1-2 at ¶¶ 13-22.) Therefore, the Court finds that, at this stage of the proceedings, the Plaintiff has sufficiently alleged the elements of estoppel to sustain its due process claim.

### iii. Count I

Count I of Plaintiff's complaint seeks injunctive relief based on a theory of equitable estoppel. (ECF No. 1-2 at 10.) Here, the Defendant reiterates its argument that the Plaintiff cannot establish a vested right and therefore its claim for injunctive relief based on equitable estoppel fails. As discussed above, the

Court finds that the Plaintiff has sufficiently alleged a vested right based on a theory of equitable estoppel. *See Decarion*, 853 F. Supp. at 1419.

### iv. Count II

Count II of the Plaintiff's complaint seeks a declaration that the ordinance is preempted by state law. (ECF No 1-2 at 12.) The Defendant argues that the local ordinance is not preempted by state law because state law requires that an applicant for a pari-mutuel wagering license show that the City approved the gambling activity by a "majority vote." (ECF No. 8 at 15.) According to the Defendant, the four-fifths vote does exactly that. (*Id.*) In response, the Plaintiff argues that the Ordinance requires a *super-majority* vote, which directly conflicts with the state statute and is therefore preempted.

The Florida legislature can preempt an area of law in two ways: (1) express or (2) implied preemption. *Vazzo v. City of Tampa*, 17-cv-2896-T-02AA, 2019 WL 1048294, at *14 (M.D. Fla. Jan. 30, 2019). Express preemption requires a specific legislative statement. *Id.* "Implied preemption exists when the legislative scheme is so pervasive as to evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature." *Id.* In order to find implied preemption, the court must look at the state's entire regulatory scheme and the regulation's object and policy. *Id.* "Another crucial factor in determining whether implied preemption exists is whether the state's statutory scheme specifically recognizes the need for local control." *Id.*

Here, the Plaintiff is asserting a claim under a theory of implied preemption. The complaint does not allege that the statute at issue includes an express legislative statement that would create express preemption. The Court finds that the Plaintiff has pleaded a claim for relief under an implied preemption theory. The complaint alleges that the Florida legislature preempted the field regulating cardrooms and pari-mutuel facilities by adopting a pervasive regulatory scheme. (ECF No. 1-2 at ¶ 42.) The Plaintiff also alleges that the City's ordinance conflicts with the state's regulatory scheme by requiring a super-majority vote to approve the gambling facility at issue. These allegations are sufficient to state a claim for relief at this stage of the litigation. *See Vazzo v. City of Tampa,* 2019 WL 1048294, at *15 (holding that plaintiffs claims were sufficient to state claim for relief under an implied preemption theory). To determine whether the Ordinance is in fact preempted, the Court would need to inquire into the state's extensive regulatory scheme, the legislative intent, and Florida policy in the area of pari-mutuel facilities. These are factual questions more appropriate for summary judgment. Accordingly, the Defendant's motion to dismiss Count II is denied.

**IV. Conclusion**

Based on the foregoing, the Court **grants in part and denies in part** the Defendant's motion to dismiss. (**ECF No. 8**.) The Defendant's motion to dismiss Count IV is granted. The Defendant's motion to dismiss as to the remaining counts is denied. The Defendant's answer to the complaint is due on or before **September 20, 2019**.

**Done and ordered** at Miami, Florida on September 6, 2019.

_____
Robert N. Scola, Jr.
United States District Judge